King, J.
Plaintiff, Kathleen Manning (hereinafter, Manning) seeks judicial review, pursuant to G.L.c. 30A, §14, of a September 15, 2000 Contributory Retirement Appeal Board (CRAB) decision which affirmed a Teachers’ Retirement Board’s (TRB) decision refusing to permit Manning to purchase retirement credit for her 1982-1984 employment in Florida as a “Teacher/Visiting Social Worker." A hearing on the parties’ cross-motions for judgment on the pleadings was held oh May 31, 2001. After considering the record and arguments of counsel, Manning’s motion will be ALLOWED and TRB’s motion will be DENIED for the reasons set forth below.
BACKGROUND
The following material facts taken from the administrative record are not disputed. Manning is a member of the Massachusetts Teachers’ Retirement System (teachers’ retirement system). She has contributed • to her own retirement account since she began employment with the Commonwealth. Her career in the public schools began in 1974 when she worked for four years as a School Adjustment Counselor in the Melrose Public Schools. In 1978, she moved to Florida and initially worked in a related area, but not in any public school. Between 1982 and 1984 she worked as a public school teacher in Fort Lauder-dale, Florida as a “Visiting Teacher/Social Worker.” She returned to Massachusetts in 1984 and worked until August 1985 as a “Service Coordinator” for the Commonwealth of Massachusetts. From September 1985 until June 1986, she worked as a “School Adjustment Counselor” for the Needham Public Schools, and has been employed as a “School Adjustment Counselor/School Social Worker” in Waltham, since September 1986.
Manning’s professional qualifications include: a BA in History with honors from the University of Massachusetts, Amherst in 1965; a Masters Degree in Social Work in 1967'with high honors from the University of Maryland; certification as a Visiting Teacher/Social Worker by the state of Florida in 1982; certification in Massachusetts as a School Adjustment Counselor (school social worker) in 1988, pursuant to G.L.c. 71, §46G; and, in 1996, certification in Massachusetts as a School Social Worker/School Adjustment Counselor pursuant to G.L.c. 71, §38G.
In November 1997, Manning requested the TRB to allow her to purchase retirement credit for the two years of out-of-state service in Florida between 1982 and 1984. The TRB denied this request on the ground that her employment in Florida was as a social worker which, prior to statutory amendments in 1990 making school social workers eligible for membership in the teachers’ retirement system, were not permitted to participate in the teachers’ retirement system. Manning appealed this decision to CRAB, arguing that the substance of her employment in Florida was the same as a Massachusetts School Adjustment Counselor, eligible under Massachusetts law for teachers’ retirement system membership. She also contended that CRAB should apply the 1990 statutory amendment retroactively, thus entitling her to buy-back credit for the period between 1982 and 1984. CRAB affirmed the TRB’s decision, because Manning’s title in Florida was not “School Adjustment Counselor” but “Social Worker.” CRAB also held that the 1990 statutory inclusion of social workers in the teachers' retirement system was prospective, thus barring Manning’s buyback of her service from 1982 to 1984. Manning now petitions for judicial review of CRAB’s decision.
DISCUSSION
The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. See Coggin v. Massachusetts Parole Bd., 42 Mass.App.Ct. 584, 587 (1997) (citing Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989). A court may set aside an administrative agency’s decision if it determines, based on the record before it:
that the substantial rights of any party may have been prejudiced because the agency decision is -
In a violation of constitutional provisions; or
In excess of statutory authority or jurisdiction of the agency; or
Based upon an error of law; or
Unsupported by substantial evidence; unwarranted by facts found by the court on the record as submitted; arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law.
G.L.c. 30A, §14(7)(a)-(g).
“Substantial evidence” is “that which a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6). In reviewing the agency decision, the court must give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. See Flint v. Commissioner of Public Welfare, 412 Mass. 416, 420 (1992). The court, however, is not bound by an administrative decision based on an error of law. See Boston Police Superior Officers Federation v. Labor Relations Comm'n, 410 Mass. 890, 892 (1991).
The only issue presented by this appeal is whether CRAB’s decision is based upon an error of law; that is, whether CRAB committed an error of law in ruling, based on the undisputed facts contained in the administrative record, that Manning was not eligible to purchase retirement credit for the period from 1982-1984 because during those years she was not working as a “teacher” within the meaning of G.L.c. 32, §1.
The term “teacher,” as defined in G.L.c. 32, §1, includes School Adjustment Counselors appointed under G.L.c. 71, §46G. CRAB based its decision on the *491 fact that Manning’s position in Florida was a “Visiting Teacher/Social Worker” and that she was not certified as a School Adjustment Counselor in Massachusetts between 1982 and 1984. Manning contends that because the duties of her position in Florida were the same as the duties of a School Adjustment Counselor in Massachusetts, that the teachers’ retirement system statute permits her to purchase credit for her work in Florida.
General Laws chapter 32, §3(4) allows teachers’ retirement system members who “rendered service as teachers” in another state, prior to their service in Massachusetts, to purchase credit for that time towards their retirement benefits in Massachusetts as if they had done the work in Massachusetts.[2] In 1957, the Legislature amended the definition of “teacher,” as used to determine eligibility to purchase out-of-state service, to include School Adjustment Counselors. See St. 1957, c. 516. In 1990 (after the service in question), the Legislature amended the definition of “teacher” again to include School Social Workers.
The outcome of this appeal turns on whether Manning “rendered service” as a teacher in Florida as required by G.L.c. 32, §3(4). Since the definition of “teacher” set forth in G.L.c. 32, §1 includes School Adjustment Counselors, Manning is entitled to the benefit provided by §3(4) if she "rendered service” as a School Adjustment Counselor in Florida between 1982 and 1984. The plain language of §3(4), which omits reference to title, makes CRAB’s interpretation clearly erroneous. Where a “statute is not ambiguous or couched in terms suggesting that we must look beyond its express language, we construe the statute in accordance with its plain meaning.” Marco v. Green, 415 Mass. 732, 739 (1993). The plain language of §3(4) dictates that the appropriate inquiry is to determine whether Manning “rendered service” as a School Adjustment Counselor in Florida; not what her employment title was.
The court rejects the position adopted by CRAB that the focus should be on Manning’s job title. Persons performing identical duties in school systems may be given many different job titles in the fifty states. It is evident that the Legislature did not intend to limit the benefits of §3(4) in the manner construed by CRAB because such an interpretation would result in manifest unfairness to many persons who would be denied the benefit of the statute simply based on the job title assigned to them by a school system in another state. Had Maiming rendered the type of services she performed in Florida in a public school of the Commonwealth, her title would have been School Adjustment Counselor, not Visiting Teacher/Social Worker. In determining whether Manning “rendered service” as a School Adjustment Counselor, it is appropriate to compare her actual job duties in Florida with the job duties of a School Adjustment Counselor in Massachusetts between 1982 and 1984. In 1982, the job description of a “School Adjustment Counselor” in Massachusetts included counseling students neglected at home, cooperating with teachers to assist in readjusting such students, establishing helpful relationships with the students’ home, enlisting the aid of clergymen and other community leaders to save children from delinquency, and serving as a referral agent to obtain aid from public and private agencies. G.L.c. 71, §46G.
Manning’s responsibilities in Florida included, among other things, “to provide a liaison between early intervention team members, community agencies, school personnel and parents including but not limited to providing case work to assist in the prevention and remediation of problems of attendance, behavior, adjustment and learning . . . make home visits and school visits relative to . .. students’ needs in areas of attendance, behavior, adjustment and learning . . . provide case work services ... in the areas of special education, basic education, early identification, early childhood, and alternative program, . . . provide information regarding school services, agency services . . . to individual students, parents, teachers and administrators . . . act as liaison between the school and Family Court and to take action on behalf of the schools in Health and Rehabilitative Services conferences in the Family Court. . . [and to] make referrals to community agencies in order to obtain necessary services for students’ health and well-being and develop follow-up procedures.” Administration Record at pp 47, 48.
Thus, the two positions are, for all practical purposes, identical. Indeed, both TRB and CRAB conceded that the two roles were “substantially the same.” Also, Manning’s responsibilities in Florida were substantially the same responsibilities she had between 1974 and 1978 when she worked as a School Adjustment Counselor in the Melrose, Massachusetts public schools.
CRAB’s reliance on the fact that Manning was not certified, pursuant to G.L.c. 71, §46G, is misplaced. First, she was certified by the state of Florida. Second, requiring out-of-state teachers to be certified as “School Adjustment Counselors” pursuant to G.L.c. 72, §46G as a condition of eligibility under §3(4), would, as a practical matter, nullify §3(4) which is specifically designed to allow members of the teachers’ retirement system to purchase retirement credit for out-of-state service. See Manning v. Boston Redevelopment Auth., 400 Mass. 444, 453 (1987) (“if a sensible construction is available, we shall not construe a statute to make a nullity of pertinent provisions or to produce absurd results”); Fleming v. Contributory Retirement Appeal Board., 431 Mass. 374, 375 (2000) (any interpretation of a statute must effectuate the Legislature’s presumed intent).
Manning and similarly situated persons performing the responsibilities of School Adjustment Counselors *492 outside of Massachusetts would by definition not be certified as School Adjustment Counselors in Massachusetts because they were not in Massachusetts during the relevant time period. Once again, the clear and unambiguous language of §3(4) focuses the inquiry on whether the individual “has rendered service” as a School Adjustment Counselor. Here, there is no dispute that Manning did render such services.
Furthermore, a comparison of the qualification requirements in Florida and Massachusetts demonstrates that Florida’s requirements for the position of. Visiting Teacher/School Social Worker were higher than Massachusetts’ certification requirements for School Adjustment Counselors. Florida’s Visiting Teacher/Social Worker position required a master’s degree in social work, certification as a Visiting Teacher/Social Worker, and social work experience.' Administrative Record, at p 47. Massachusetts, on the other hand, simply required that “[n]o person shall be employed [as a School Adjustment Counselor] unless his professional and personal qualifications have been approved by the commissioner of education and the commissioner of youth services.” G.L.c. 71, §46G (1982). Thus, unlike Florida, Massachusetts had no objective criteria for certification as a School Adjustment Counselor.
For these reasons the court concludes that CRAB’S decision is based on an error of law. Manning was entitled to purchase retirement credit for her service in Florida between 1982 and 1984. For this reason CRAB’s decision must be annulled.[3]
ORDER
Plaintiffs motion for judgment on the pleadings is ALLOWED and the Teachers’ Retirement Board’s motion for judgment on the pleadings is DENIED.
Judgment shall enter annulling the September 15, 2000 decision of the Contributory Retirement Appeal Board in CR-99-012. This case is hereby remanded to the Contributory Retirement Appeal Board for action consistent with the court’s opinion.

 General Laws c. 32, §3(4), provides in pertinent part:
Any member in service . . . may, before the date any retirement allowance becomes effective for him, pay into the annuity savings firnd of the system in one sum, or in instalments, upon such terms and conditions as the board may prescribe, an amount equal to that which would have been withheld as regular deductions from his regular compensation for such previous period . . . had such service been rendered in a public school of the commonwealth and had he been a member of the teachers’ retirement system during the period the service was rendered . . .

 In light of this court’s ruling the court does not reach Manning’s claim that the 1990 amendment to the statute applies retroactively to her 1982 — 1984 employment in Florida.