Town of Wakefield *vs.* Labor Relations Commission &
another.[1]

No. 97-P-139.

Suffolk. April 13, 1998. - October 9, 1998.

Present: Armstrong, Lenk, & Beck, JJ.

*Labor Relations Commission. Municipal Corporations,* Town meeting, Select-
men, Municipal finance. *Administrative Law,* Judicial review.

The Labor Relations Commission erred as a matter of law in concluding that
   issues remained to be bargained after a town meeting voted to discontinue
   funding for a union position consisting of a one-person department.
   [632-633]

Appeal from a decision of the Labor Relations Commission.
*John Foskett* for the plaintiff.
*John B. Cochran* for the defendant.
*Matthew E. Dwyer & Christine L. Nickerson,* for the
intervener, submitted a brief.

Armstrong, J. In the spring of 1989, after the man who held
the position of "master mechanic/selectmen" retired, Wakefield
officials debated whether they should appoint his part-time as-
sistant, David Gaw, to that position or transfer the duties to the
public works department's mechanics. The advantage of the lat-
ter course, according to the master mechanic who headed that
department, was that the work could be performed at a lower
cost (by substituting an ordinary mechanic, supervised by a
master mechanic, for the higher-paid master mechanic/
selectmen) with an improvement in quality (such as round-the-
clock emergency services). The decision was made to appoint
Gaw master mechanic/selectmen, and was reflected in the
budgets for the fiscal years 1990 and 1991. The question

---

[1]Wakefield Municipal, Administrative, Supervisory & Professional
Employees Association, intervener.

resurfaced in the spring of 1991, and, when the fiscal year 1992 budget was presented to town meeting, the board of selectmen, which was the town's collective bargaining agent, was recommending continued funding (roughly $35,000) of the master mechanic/selectmen position, opposed by the finance committee, which recommended termination of that position in favor of an appropriation of $25,000 for "contractual services." (The latter, according to the finance committee, could be used either for private contractors or for services obtained through the public works department.) On June 3, 1991, at the town meeting, the chairman of the board of selectmen argued for retaining the master mechanic/selectmen position, but the town meeting rejected the argument and voted instead for the $25,000 appropriation for contractual services. Accordingly, the selectmen notified Gaw that his position would be eliminated at the end of the month, and the work was at some time thereafter transferred to the public works department.

Gaw's union (Wakefield Municipal, Administrative, Supervisory & Professional Employees Association) filed a grievance on his behalf, arguing that Gaw's discharge violated the collective bargaining agreement, and that his position as a one-person department servicing primarily police and fire vehicles could not be abolished and the work transferred to the public works mechanics, who were in a different collective bargaining unit, without first negotiating with Gaw's union. See G. L. c. 150E, § 10(*a*)(1) and (5) (duty to engage in collective bargaining prior to making a unilateral change in duties). The selectmen argued that town meeting's vote left them no choice but to eliminate the position and that there was thus nothing to bargain about. The union then filed a charge of prohibited practice with the Labor Relations Commission (commission), which issued a complaint. The commission's administrative law judge ruled that the selectmen did have a duty, apparently between June 3 and the end of June, to engage in impact bargaining with the union; but, because elimination of the position was inevitable despite the effort of the selectmen to avoid that result, the remedy should be to order impact bargaining to commence within five days of the administrative law judge's decision, and to award Gaw compensation during the period of negotiation to the point of impasse or agreement. On appeal by the union, the commission adopted the administrative law judge's findings in toto, but rejected her remedy, on the basis that "we do not

consider the layoff of Gaw to have been inevitable, . . . [and therefore] conclude that the appropriate remedy is an order to restore the *status quo,* including reinstatement and back pay." The commission cited as authority, *School Comm. of Newton* v. *Labor Relations Commn.,* 388 Mass. 557, 576 (1983).

The case is before us on the town's appeal from the commission's order. The town did not appeal to the commission from the order of the administrative law judge, and it accepts her order in this appeal, implicitly acknowledging that the selectmen should have negotiated with the union on the impact of the town meeting's decision to terminate funding for Gaw's position. Its only argument is that the commission's change of remedy was unwarranted. The union, in response, relies on the accepted proposition that, once it is established that a party has resorted to a prohibited practice, the choice of remedy lies within the discretion of the commission. *Id.* at 580. *Therrien* v. *Labor Relations Commn.,* 390 Mass. 644, 648 (1983). *Labor Relations Commn.* v. *Everett,* 7 Mass. App. Ct. 826, 829-830 (1979).

On the unusual procedural posture of this case, that general proposition is not controlling. Not before us for review is the conclusion of the administrative law judge that the selectmen engaged in a prohibited practice when they failed to engage in impact bargaining, although it is difficult to imagine on the facts of this case what remained to be bargained about after the town meeting. The administrative law judge did not indicate what she had in mind. The commission suggested that perhaps they might have bargained about recall rights, although these were fully covered by the collective bargaining agreement; or bumping rights, although it is hard to see what application this could have when Gaw's whole department had been eliminated, and the comparable positions in the public works department were protected by the collective bargaining agreement for their separate bargaining unit; or, finally, layoff rights, which in context seem to be a euphemism for ignoring the vote of the town meeting. We see no escape from the proposition that the town meeting vote made the termination of Gaw's position inevitable. The selectmen could not legally continue to employ Gaw after the appropriation funding his position had run out. See *Board of Educ.* v. *Boston,* 386 Mass. 103, 111 (1982); *Somerville* v. *Somerville Mun. Employees Assn.,* 418 Mass. 21, 24-25 (1994); *County of Suffolk* v. *Labor Relations Commn.,* 15

Mass. App. Ct. 127, 131-132 (1983). This case is not like the single authority cited by the commission, *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. at 563, 566-567, in which the decision to achieve a reduction in force in the janitorial ranks, itself beyond collective bargaining, left open for bargaining the means of achieving that reduction, e.g., by layoffs or by a reduction in hours, and the effect on the scope of custodians' duties.

We do not understand the commission to have ruled that the town meeting committed a prohibited practice by voting to eliminate Gaw's position and department.[2] Such a ruling would have the effect of "distort[ing] the normal political process for controlling public policy." *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 211 (1982). See *School Comm. of Boston* v. *Boston Teachers Union, Local 66*, 378 Mass. 65, 70-71 (1979). Rather, the commission's decision to change the remedy applied by the administrative law judge was based squarely on its view that Gaw's layoff was not inevitable. That proposition was wrong as matter of law. "We generally accord considerable deference to the commission's disposition of a charge. . . . No such deference is appropriate, however, when the commission commits an error of law. See G. L. c. 30A, § 14(7)(*c*) (agency decision '[b]ased upon an error of law')." *Boston Police Superior Officers Fedn.* v. *Labor Relations Commn.*, 410 Mass. 890, 892 (1991).

The remedy ordered by the administrative law judge was not appealed from by the town. The commission adopted her decision in every respect but one, that based on its erroneous view that Gaw's termination was not inevitable. Its decision is vacated insofar as it alters the remedy. The remedy ordered by the administrative law judge is reinstated.

*So ordered.*

---

[2]The union's brief intimates that *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197 (1982), stands for the proposition that town meeting was prohibited from eliminating Gaw's position because, by the time town meeting convened, the town had already ratified and funded the first year of a three-year collective bargaining agreement which included Gaw's position. However, *Boston Teachers Union* merely provides that salary increases in a multi-year agreement are deemed approved by virtue of funding approval for the first year of the agreement. *Id.* at 204. The opinion further holds that, even where an agreement contains a job security clause (as the agreement in the instant case does not), such a clause is enforceable for no more than a year at a time. *Id.* at 213.